**In The Matter of B-F BUILDING COR-
PORATION, Bankrupt.
No. 79685.**

United States District Court
N. D. Ohio, E. D.
March 16, 1960.

Ralph H. Coleman, Cleveland, Ohio,
Trustee.

Hugh Wells, Cleveland, Ohio, for Trus-
tee. Thompson, Hine & Flory, Cleve-
land, Ohio, for General Electric Co.

Jerome C. Speck, Parma, Ohio, for
Charles Schulz Bldg. Co.

Morris R. Blane, Cleveland, Ohio, for
Bankrupt.

JONES, District Judge.

In this proceeding, after an involun-
tary petition in Bankruptcy had been
filed by General Electric Credit Corpo-
ration, the alleged bankrupt filed its con-
sent to adjudication as a bankrupt and
was so adjudicated September 22, 1958.
Eventually several creditors were found
with claims aggregating a sum con-
siderably in excess of the assets of the
B-F Building Corporation. In addition,
General Electric Credit Corporation and
General Electric Corporation filed claims
totalling more than $800,000, based upon
a written guarantee of the debts of the
Baird-Foerst Corporation, said guaran-
tee being executed in the name· of "The
Baird-Foerst Building Corporation" by
Baird as President and Foerst as Vice
President.

It is stipulated that no such corpora-
tion exists and that the corporation own-
ed by Baird and Foerst which owned the
real estate leased by the Baird-Foerst
Corporation was named "The B-F Build-
ing Corporation". The Trustee in Bank-
ruptcy objected to these last claims and
was upheld by the Referee. This is a
review of that decision.

It appears that the guarantee is
signed with the name of a non-existent
corporation, as stated above. It is clear

without authority that if an incorrect corporate name appears, the corporation is nevertheless bound if it is obvious that the name was given in error and that the corporation sought to be bound is the corporation intended in the guarantee. In this case, the Referee held merely that the name was not the same, with no reference to the question of intent.

The Referee further found that the directors of B-F Building never formally authorized the guarantee. On the other hand, two of the three directors (the sole stockholders) signed the guarantee and the directors never repudiated it. This point seems to be in equipoise.

■ General Electric (the two claimants will be treated as one) claims further that the corporation was authorized by its charter to guarantee the debts of another (a point which will be discussed later), but even if it was not so authorized, the Trustee cannot raise the defense of "ultra vires" against General Electric since O.R.C. § 1701.13(H) limits this defense to situations differing from this one. On this point, I must hold that the Trustee may raise this defense in this proceeding as if it were an action against directors under § 1701.13(H) (3). See 3 Collier on Bankruptcy § 63.07 at pp. 1805 et seq., in which it is pointed out that this question is ordinarily tied in with the questions of corporate authority and benefit to the bankrupt corporation.

As to corporate authority, the articles state that the purpose of the corporation is:

"To build, construct, erect, repair, own, manage, lease, rent, sell, exchange, buy, rebuild, and operate buildings, houses, apartments, factories, stores and structures of all kinds, land on which they may be situated and vacant land, to have and to exercise all the powers and rights conferred by the laws of Ohio upon corporations formed under the General Corporation Act of the State of Ohio."

Prior to a 1949 amendment, O.G.C. § 8623-8 provided:

"Subject to any limitations or restrictions which may be imposed thereon by the articles, every corporation shall have authority to * * * guarantee * * * evidences of indebtedness * * * of any corporation."

There is no limitation stated in the articles of the B-F Building Corporation, so obviously under a literal reading of this statute, the corporation would have authority to guarantee the debts of another corporation. However, it is probably true that the legislature was aware of substantial case law to the effect that this power could be used only to carry out the stated purposes of a corporation, and only later was it realized that a statute supersedes prior case law and no such limitation appeared in the statute. This would seem a logical reason for the later amendment of the statute to read:

"In carrying out the purposes stated in its articles and subject to limitations prescribed by law or in its articles, a corporation may * * * ."

The statute was carried into the Revised Code in this general form and presently is O.R.C. § 1701.13(F) (5). The amendment was made effective September 9, 1949, nearly a month prior to the incorporation of B-F on October 10, 1949.

■ From the above statute it would seem manifest that the authority to guarantee debts of another must be stated in the articles or the guarantee must be of assistance in carrying out one of the purposes which are stated. General Electric asserts that assisting a tenant in obtaining necessary credit is incidental to the purposes of the corporation, but a more reasonable finding is that the bankrupt guaranteed debts of another corporation wholly owned by directors and officers of the bankrupt, for their benefit and not for the benefit of the bankrupt (assuming the corporation intended was, in fact, B-F), and to the

detriment of others who extended credit to the bankrupt without knowledge of the purported guarantee.

It is my considered judgment that without regard to whether the bankrupt corporation was intended by the signature on the guarantee, and/or whether the action of Baird and Foerst in signing the guarantee was authorized or ratified by the directors, such action was ultra vires the authority stated in the articles of incorporation and not binding on the corporation, at least insofar as affecting the rights of direct creditors. Further, this defense properly may be asserted by the Trustee, who stands in place of the bankrupt for the benefit of creditors.

Finally, on the basis of the stipulated facts, which alone control decision, the bankrupt had no authority by law, by charter, or by corporate action, to guarantee these accounts and did not do so. No inferences of mistake or error in the transaction may be indulged.

For the foregoing reasons and those stated by the Referee in his certificate on review and memorandum in support thereof, his order sustaining the objections of the Trustee and disallowance of the claims of General Electric Corporation and General Electric Credit Corporation must be confirmed.

### Certificate of Referee

To the Honorable Judges, United States District Court, Northern District of Ohio, Eastern Division, sitting in Bankruptcy:

I, William B. Woods, Referee in Bankruptcy, in charge of the above proceedings, do hereby certify:

This is a proceeding in which a petition was filed by one alleged creditor, General Electric Credit Corporation vs The B-F Building Corporation, of Parma, Cuyahoga County, Ohio, alleged bankrupt, on March 17th, 1958, claiming a debt due it of $220,321.98, and alleging there were less than 12 creditors; after reference on the same day Ralph H. Coleman of Cleveland was appointed Receiver of alleged Bankrupt.

On March 19th, 1958, the alleged Bankrupt filed its answer denying generally all allegations of the petition, except as to its organization and place of business; and on March 22nd, 1958, an amended petition was filed claiming a debt due petitioner of $444,304.95.

Thereupon the Answer of the alleged Bankrupt was filed on March 19th, 1958, denying that the General Electric Credit Corporation is a creditor of The B-F Building Corporation, and denies that the Corporation had guaranteed any payment to the petitioner, and denied committing an Act of Bankruptcy. After hearings had, on September 22nd, 1958, said alleged Bankrupt filed its consent to adjudication as a Bankrupt and was so adjudicated on that day. Schedules were filed by the Bankrupt on December 23rd, 1958, showing some 9 creditors, and not including General Electric Credit Corporation or General Electric Company as creditors of Bankrupt.

At the First Meeting of Creditors on January 5th, 1959, Ralph H. Coleman was elected as Trustee of said Bankrupt. Thereafter on April 6th, 1959, General Electric Credit Corporation filed its claim for $241,093.12, and on May 6th, 1959, General Electric Company filed its claim for $552,251.57, and to both of these claims Ralph H. Coleman, Trustee, filed his objections.

From the Stipulation of the parties approved by the Referee, it appears that both General Electric Company, and its subsidiary, General Electric Credit Corporation, rely upon a paper executed in April 1953 (Exhibit 15, attached to Stipulation), beginning, "As an inducement to you to accept orders from Baird-Foerst Corporation", there follows 4 paragraphs in fine print stating, "This is a continuing guaranty from this date * * *", and signed, "Baird-Foerst Corporation, Inc., by W. J. Baird, President, and H. Foerst, Vice President".

While these men so signed as officers of the Baird-Foerst Building Corporation, such signature is not the signature of this Bankrupt, The B-F Building Corporation, and the controversy here is on

the question of whether said contract of guaranty so signed by the officers of the Baird-Foerst Building Corporation is to be considered as a contract of The B-F Building Corporation, now in Bankruptcy.

Upon hearing had, testimony was taken, stipulation of parties was executed, approved by the Referee, and filed herewith. Briefs were filed by counsel, and on September 16th, 1959, an Order was entered denying validity and allowance of said two claims.

Thereafter being aggrieved thereat on September 28th, 1959, Petitions for Review of Referee's Order were filed by General Electric Company and by General Electric Credit Corporation.

### Findings of Fact

At the hearing, parties filed on July 1st, 1959, a Stipulation In Re Objections to the Claims of the General Electric Company and the General Electric Credit Corporation, which includes the guaranty contract relied upon in the claims filed by the two G. E. companies to establish their rights as creditors, and which are objected to by the Trustee of Bankrupt. To aid in considering this by the Court, the Stipulation is copied herewith, as follows:

"1. That the claims of General Electric Company and General Electric Credit Corporation are based upon a written guarantee, a copy of which is attached to the claims of General Electric Company and General Electric Credit Corporation and to this stipulation;

"2. Said guarantee was executed under the name of 'Baird-Foerst Building Corporation, Inc.' and was signed by W. J. Baird as President and H. Foerst as Vice President;

"3. No corporation exists having the name 'Baird-Foerst Building Corporation, Inc.,' and the real name of the alleged guarantor was The B-F Building Corporation;

"4. That the corporation record book of The B-F Building Corporation contains no records or minutes of any meetings of directors or shareholders after November 1949, when the company was organized;

"5. That the said guarantee contains the date of April 1953, and no day is mentioned;

"6. That the sole business of The B-F Building Corporation at the time of execution of said guarantee was owning and leasing a building at 4501 State Road, Parma, Ohio, to the Baird-Foerst Corporation;

"7. That at the time of execution of said guarantee W. J. Baird and H. Foerst were the sole shareholders of The B-F Building Corporation, they were directors, together with Mr. Baird's wife, and they held the offices of President and Vice President, respectively;

"8. That at the time of execution and delivery of said guarantee Messrs. Baird and Foerst were the two principal shareholders of the Baird-Foerst Corporation, they were both directors of such corporation and they held the offices of President and Vice President, respectively, of said corporation;

"9. That the said guarantee contains no corporate seal;

"10. That the objections to the claims of General Electric Company and General Electric Credit Corporation shall be tried upon this stipulation and briefs of the parties hereto;

"11. That attached hereto and incorporated herein is a copy of the guarantee."

Additional Findings of Fact pertinent to the controversy presented here are as follows:

12. At the hearings on the Petition to Adjudicate the Corporation as a Bankrupt, the Answer of the now bankrupt Corporation filed on March 19th, 1958, denies any debt to either of these claimants; and during the course of the proceeding thereafter on September 22nd, 1958, the Corporation filed its con-

sent to an adjudication, and schedules were filed by the Bankrupt on December 23rd, 1958, which do not include either G. E. company as a creditor, nor have they ever been so considered by the Bankrupt Corporation.

## Conclusions of Law

1. That a corporation may guarantee the obligations of another corporation under the laws of Ohio, only if properly authorized by the articles of the corporation, or by action of the board of trustees.

2. That the guarantee of a non-existent corporation cannot be recognized as a guaranty of a debt of an existing corporation, unless the said guaranty was an error or a bona fide mistake.

3. That a corporation with no authority to guarantee obligations of another corporation arising from its articles, or derived from its minutes, may only guarantee such obligations of the other corporation as arise under the Ohio Revised Code § 1701.13(F) (6), if the guarantee is incidental to the purpose stated in the articles.

4. That error, mistake, negligence or carelessness of a corporation, or of its officers, in the execution of a written contract of guaranty, cannot be corrected to become a contract of another corporation so as to make liable the other on the contract, without its consent; so that claims which have been objected to by the Trustee may not be allowed as valid claims against a bankrupt which never executed the contract of guaranty.

5. That the contract of guaranty executed by "The Baird-Foerst Building Corporation" does not constitute a valid contract binding on The B-F Building Corporation, this Bankrupt, and such alleged claims of the General Electric Company and the General Electric Credit Corporation are not to be allowed as debts of Bankrupt.

6. That there is failure of proof to show that Bankrupt Corporation by its directors or stockholders had authorized its officers to execute contracts of guaranty binding on it as provided in the Ohio Revised Code, Section 1701.13(F) (5) (6), requires a finding that claimants have no valid and allowable claims as creditors of this Bankrupt.

7. That since the Trustee stands in the shoes of the Bankrupt in such capacity, he may question the acts of directors under Ohio Revised Code, Section 1701.13(H) (2).

8. That there being no Baird-Foerst Building Corporation, Inc., the two men, Baird and Foerst, in executing the contract of guaranty were acting for themselves only, and not for the Corporation now Bankrupt, and the claims of General Electric Company and General Electric Credit Corporation are not provable under Section 63, sub. a(8) of the Bankruptcy Act, 11 U.S.C.A. § 103, sub. a(8).

## Memorandum

Extensive briefs have been filed by the Trustee and by counsel for the two claimants, the General Electric Company, and its subsidiary, the General Electric Credit Corporation. Trustee objected to both claims, and counsel for claimants have failed to present any bankruptcy or federal authority which seems applicable to the question presented here, to sustain such contract of guaranty as producing any liability of this corporate Bankrupt.

The Stipulation before the Court presents the evidence and sets forth that objections to both claims are to be so considered, although only the one objection to by the General Electric Company is on file; also the facts show that the answer of the Bankrupt denied that either of the G. E. companies were creditors of debtor, and later during the hearings debtor filed its consent to adjudication.

Even if it be considered that the action of Baird and Foerst was that of The B-F Building Corporation, there is no proof that the board of directors of Bankrupt ever authorized such action, and no provision is shown in the rules and regulations or by-laws for the executing of contracts of guaranty by the Corporation. Under Ohio Law, a cor-

poration acting under Revised Code, Section 1701.13(F) (5) (6), and without specific authority, "may * * * guarantee or secure obligations of any person", but the corporation is limited under (6) to, "things * * * stated in its articles or incidental thereto". In People ex rel. Peabody v. Chicago Gas Trust Co., 130 Ill. 268, 22 N.E. 798, 799, 8 L.R.A. 497:

> "An incidental power (of a corporation is said to be) is one that directly and immediately appropriate to the execution of the specific power granted, and not one that has a slight or remote relation to it".

Early in Ohio, in Straus v. Eagle Insurance Co., 1855, 5 Ohio St. 59, 60, long before this statute was enacted, Judge Ranney said:

> "A company has no power to become a party to the contract of endorsement and no capacity to receive or hold a legal title to the note. Corporations have such powers and such only as the act creating them confers, and are confined to the exercise of these expressly granted and such incidental powers as are necessary for the purpose of carrying into effect the powers specifically conferred".

> "The general rule in this country and in England is that one corporation is impliedly prohibited from guaranteeing the contract or debt of another".

Further, under Ohio Corporation Law, the Trustee stands in the shoes of Bankrupt the same as provided in Bankruptcy Act, Section 70 and 70, sub. c, 11 U.S.C.A. § 110, sub. c, and Ohio Revised Code, Section 1701.13(H) (2), so the Trustee may contest authority of an alleged contract of Bankrupt which was not authorized by proper corporate action.

Bankrupt, The B-F Building Corporation, never considered either General Electric Company, or its subsidiary, General Electric Credit Corporation, as its creditors, and neither is listed as such in the schedules as herein filed by the Bankrupt.

Counsel for Charles Schulz Building Company filed a brief supporting the Trustee's objection to the claims of the two General Electric Companies. This is an extensive brief and in closing his argument submits that, "the claim of General Electric Credit Corporation should be rejected for the reason that it is founded upon a guaranty agreement which was outside the scope of the authority of the bankrupt. Since the bankrupt itself could have availed itself of this defense, it follows that the Trustee has the same power to assert that defense". This creditor, Charles Schulz Building Company, is listed in the Schedule filed by Bankrupt as having two claims against Bankrupt, $10,729.68 and $10,500, total $21,229.68.

So as a last resort, counsel for claimant who filed the creditor's petition urges that because bankruptcy has been admitted by the alleged bankrupt, the claim of his client has standing and should be so recognized, but the fact is defendant debtor denied General Electric was a creditor in its answer of March 19th, 1958. This argument fails to meet the issue as presented, for when the consent of debtor was filed adjudication followed immediately as a voluntary bankrupt; so now in the course of the proceeding the Trustee properly objects to such claims founded on inference, since such cannot be recognized under the provisions of the Bankruptcy Act, Section 63, sub. a(8), 11 U.S.C.A. § 103, sub. a (8), so that Trustee's objections were sustained as to the allowance of such claims.